## CORTEX DRILLING CO. et al. v. HENNING.

No. 21846. Opinion Filed April 21, 1931.

Rehearing Denied May 19, 1931.

Owen & Looney, Paul N. Lindsey, and J. Fred Swanson, for petitioners.

Emerson & Duncan, for respondents.

RILEY, J. This is an original proceeding in this court to review an award of the State Industrial Commission in favor of respondent, D. M. Henning.

At the hearing before the Industrial Commission, an accidental injury arising out of and in the course of employment and daily wages of $7.50 were admitted by the employer and insurance carrier. The award made was for eleven weeks and one day total temporary disability and 287½ weeks for total permanent loss of use of the right eye and 15 per cent. permanent loss of use of the left eye, computed as 57½ per cent. permanent loss of both eyes. The finding of the Commission as to the cause and extent of the injury was:

"As a further result of said accidental injury by reason of the breaking of glass gauge and same striking claimant in the right eye, and hot water from same being blown into both of claimant's eyes, claimant suffered a total loss of vision in the right eye, and a 15 per cent. permanent impairment to the left eye."

Petitioner concedes that there is evidence to support the finding of the Commission as to the total loss of the right eye, but contends that there is no competent evidence to support the finding the claimant sustained a 15 per cent. loss of vision of his left eye. It is also conceded that if the court finds there is evidence to support the finding as to 15 per cent. loss of the left eye, the award is correctly entered for a percentage of the loss of vision of both eyes under the established rules of computation by this court in such cases.

The only question, then, is the sufficiency of the evidence to sustain the finding as to the cause and extent of the injury to the left eye. As to the extent of loss of vision, if any there be, caused by the accident, the evidence is not in conflict. All the expert witnesses agree that at the time of the hearing the vision of claimant's left eye was 20/50, which was explained as being 15 per cent. below normal, and that such condition

was permanent. We are then to look to the record to determine whether or not there is evidence to support the finding of the Commission that:

"By reason of the breaking of a glass gauge and same striking claimant in the right eye and hot water being blown into both of claimant's eyes, claimant suffered * * * a 15 per cent. permanent impairment to the left eye."

Claimant testified (R. p. 4):

"Q. How did the accident happen? A. A gauge glass bursted, cutting the right eye, and hot water got in both."

This evidence that hot water was blown into both eyes.

Claimant testified further:

"Q. What doctor took charge of you there? A. L. M. Westfall. Q. What did he treat? A. Well, he treated my right eye all the time and my left eye occasionally. * * * Q. Prior to this accident, have you ever had any trouble with your eyes? A. No, sir. Q. Any difficulty whatever, in seeing? A. None whatever. * * * Q. How, much do you see with your left eye? A. I figure I can see about two-thirds as good as I could. Q. Two-thirds as good as before the accident happened? A. Yes, sir. Q. How does the left eye bother you when you try to use it? A. There is always matter passing over it, and it still aches and burns. Q. Matter passing over it? A. Yes, usually—especially in the morning. * * * Q. Have you ever had an injury to your left eye prior to the time of this accident? A. No, sir. Q. As far as you know, your eyes were in good condition at the time of the accident—both of your eyes? A. Perfect, so far as I know. By Mr. Emerson: That is all.

"Cross-Examination.
"By Mr. Gunnells:

"Q. In other words, your eyes were perfect, in so far as you know? A. Yes. Q. Had you ever had your eyes examined? A. No, sir, I never was in an eye specialist's office before the accident. Q. Then, if you ever had any loss of vision, you never knew it? A. No, sir, I had good eyesight. * * * Q. Did you ever have an injury to your eyes before? A. No, sir. Q. And never had them treated for anything? A. No, sir. Q. You state at the time this accident occurred, your right was injured, I believe you said, by something striking you in your eye? A. A piece of glass hit me in the right eye and cut it. Q. And you say the other eye was injured at that time? A. Hot water and steam in both eyes."

Dr. A. L. Guthrie, an admitted qualified specialist, testified in part:

"Q. Doctor, have you had occasion to examine Mr. Henning? A. Yes, sir. Q. What was the date of your examination? A. 18th

of August, 1930. Q. What was disclosed to you in that examination? A. A complete loss of his right eye, due to an injury on May 6, 1930, and he complained of loss of vision in the left eye. The vision in the left eye was 20/50. Q. 20/50? A. With a slight infection of the conjunctiva—very slight. No other pathology to be demonstrated in the left eye. Q. Were you able to form an opinion as to whether or not the injury to the left eye was caused by the accident? A. I couldn't tell. * * * Q. I will ask you, Doctor, what is the nature of the injury to the right eye? A. Well, there was a marked laceration—a traumatic cataract from the injury causing complete blindness of that eye. Q. In the right eye? A. Yes, sir. Q. What type of injury is most apt to cause sympathetic irritation to the other eye? * * * A. An injury of this type involves the selera, cornea, and iris, and probably causes a sympathetic ophthalmia in the other eye more than the injury. Q. Does a man ever have sympathetic irritation, where all of the symptoms are subjective and no objective symptoms? A. Yes, sir, he might have."

He testified further that on August 18th he found a slight infection of the conjunctive "slightly reddened around the margin of the cornea; not enough to draw a conclusion on."

Dr. Fred B. Hicks, an admitted qualified specialist, testified that he had examined claimant on July 7th, and found his condition to be:

"* * * In other words, he is totally blind in the right eye, and the vision of the left eye was 20/50—otherwise, his eye was normal, as far as I could tell. Q. 20/50 represents what vision, Doctor? A. 84 per cent. vision and 15 per cent. loss. Q. Could you, from your examination, tell what caused the loss of vision in the left eye? A. I could not. Q. Could you find any objective evidence in the eye? A. No, sir. Q. Did you find any evidence of sympathetic condition? A. No, sir. Q. Do you have an opinion as to the history obtained and your examination, whether there is any loss of vision to the eye—an injury to the left eye? A. I couldn't say I could. There is no objective signs you can see in the right eye, as to why he cannot see better; all of the media is clear, retina is normal, vision of the eyeball is normal, and I really don't have a definite opinion. Q. In other words, as far as your examination is concerned, the eye was normal to appearance? A. Yes. Q. Do you find any reason for the lack of vision in the left eye? A. No, sir. * * * Q. Doctor, is it possible for a man to have a sympathetic irritation in an eye with only subjective symptoms, where there are no objective symptoms at all? A. Well, that kinda brings out the point I brought out a minute ago; it is questionable as to whether or not you could have a sympathetic condition that would affect the

74

vision enough to cause a loss of vision, without some visible evidence; however, it could be possible. Q. It would be possible to have an irritation without any subjective symptoms? A. Possibly."

He also testified:

"By The Court: Q. Assuming that the evidence in this case is that the water gauge bursted, blowing glass in the claimant's right eye, and hot water in the left eye, would it be possible for the condition you find now, in the left eye, to be due to the injury, or sympathetic condition? A. Possibly, yes. Q. There is no evidence? A. No visible signs, but it is possible.

"By the Court: That is all.

"By Mr. Gunnells: Q. Now, when you say possible, Doctor, you don't mean it is probable—you mean it is possible—just what you say? A. Yes, possible."

Dr. Westfall, the specialist who treated claimant while in the hospital, testified quite positively that there never was any evidence of any sympathetic condition of the left eye, and that there was nothing whatever to show why claimant had a loss of vision of the left eye at all, "nothing to account for it," and that there was never at any stage any evidence of a sympathetic condition in the left eye.

We have set out the testimony somewhat at length for the reason that petitioner boldly asserts that there is no competent evidence to support the finding of the Commission that claimant sustained a 15 per cent. loss of vision of his left eye.

With this contention we cannot agree. To begin with we have some evidence that prior to the injury claimant's vision was perfectly normal. We think that without this evidence the presumption would be that claimant's vision was normal. Certainly there is evidence that after the injury claimant's vision in the left eye was impaired at least 15 per cent. Then, how is the impaired vision to be accounted for? There is absolutely no evidence to show that it was caused by anything other than the hot water and steam which was blown into claimant's eye or by sympathetic conditions resulting from the admitted traumatic condition of the right eye caused by glass from the bursting gage being blown into it, or both. From the testimony of Dr. Hicks and Dr. Guthrie, it was clearly possible for the condition found to exist in the left eye to be so caused.

We, therefore, conclude that there is competent evidence to sustain the finding of the Commission. The finding and award of the Commission must be, and is sustained.

LESTER, C. J., CLARK, V. C. J., and CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. HEFNER and KORNEGAY, JJ., absent, not participating.